No. 111.—JOHN NEAL, assignor, plaintiff in error, vs. HENRY G. LAMAR, JOHN LAMAR and THOS. R. LAMAR, defendants in error.

[1.] The single fact that a witness appears as a party upon the record, is not sufficient to exclude his testimony, if he have no interest in the event.

[2.] An administratrix may execute an instrument releasing a witness from all liability to her intestate's estate, where it is for the interest of the estate that this should be done.

[3.] One of several parties defendant to a judgment cannot be admitted as a witness to prove circumstances going to show that the judgment was dormant, as this would be to allow him to furnish evidence in favor of his own interest.

[4.] The Act of December 19, 1822, commonly called the Dormant Judgment Act, does not necessarily require the settlement of executions within the period of every seven years, nor prohibit a judgment creditor from indulging his debtor, *in good faith*, beyond that time. It was intended to prevent the *fraudulent* enforcement of *dormant* judgments to the injury of *bona fide* creditors.

*Fi. Fa.* and illegality, in Bibb Superior Court. Decided by Judge POWERS, May Term, 1855.

The executors of James Billingslea obtained a judgment and execution against the defendants in error, at the March Term, 1845, of Bibb Inferior Court. On the 15th day of January, 1849, the plaintiff transferred the *fi. fa.* to John Neal. On the 12th day of June, 1850, the Sheriff of Pike County, where Neal resided, the defendants, at that time, living in Bibb and Clarke Counties, made a return on said *fi. fa.* of "no property."

On the 12th day of August, 1854, the *fi. fa.* was levied, by the Sheriff of Bibb County, on property of John Lamar, who died since the judgment was obtained, one of the defendants and a joint principal in the *fi. fa.* To which proceeding the administratrix of John Lamar filed an affidavit of illegality, on the following grounds:

1st. Because the *fi. fa.* is dormant, the return of the Sheriff of Pike County being fraudulent, defendants having, at the

time, property in Bibb, Clarke, Monroe and other Counties, subject to the *fi. fa.*

2d. Because John Lamar's estate is discharged from all liability on account of said *fi. fa.* he being only security on the note on which the *fi. fa.* is founded, and Neal having, for a consideration, given H. G. Lamar time and further day of payment on the *fi. fa.* without the consent of John Lamar, or his representative since his death.

3d. Because if any thing is due on said *fi. fa.* it is only the principal, Neal having agreed with Henry G. Lamar to give him time and day of payment, by said H. G. Lamar agreeing to pay him more than legal interest for such indulgence.

On the trial, the defendant having first released Henry G. Lamar from all liability over on said *fi. fa.* offered him as a witness to prove that John Lamar was only security on the note upon which the *fi. fa.* was founded.

Plaintiff objected to him, on the ground that he was a party to the record and interested in the issue; and upon the further ground, that the administratrix of John Lamar was not the proper person, and had not the power, as administratrix to release the witness. The Court over-ruled the objection, and plaintiff excepted.

The Court charged the Jury, "that it was not competent, under the law, to carry a *fi. fa.* to a county remote from the residence of defendants, where they had property, and procure in this remote county, where they had none, the entry of 'no property' in order to keep the *fi. fa.* open; such an act would be a fraud on the Statute; that the policy of the law had in view the entire settlement of old *fi. fas.* within the period of every seven years." To which charge of the Court plaintiff excepted.

WHITTLE; COLE, for plaintiff in error.

STUBBS & HILL, for defendants in error.

*By the Court.*—STARNES, J. delivering the opinion.

[1.] The point first made in this case presents the question, whether or not the mere fact that the name of a witness appears as a party upon the record, is sufficient to exclude his testimony, even though he has no interest in the event.

Having fully discussed this question in the case of *Wooten & Co. vs. Nall*, decided at this term of the Court, it is unnecessary for us to add the reason for our decision in this case. We content ourselves, therefore, with referring to the judgment delivered in that case, for the reasons which influence us to decide that the Court below was right in holding, that if Col. Lamar had no interest in the suit, he was not incompetent as a witness, because he was nominally a party to the same.

[2.] But it was also objected that the administratrix of John Lamar had no authority, as administratrix, to release the witness; and that such a release from the administratrix, if it were lawful, did not relieve the witness from liability to the plaintiff.

We have no difficulty in recognizing the right and power of an administrator, or administratrix, to do any such act for the benefit of the estate. Of course, he or she acts at his or her peril. If the act be for the interest of the estate, or if it be what should reasonably have been done, under the circumstances, for the promotion of the best interests of the estate, the law will sustain and protect the trustee in the exercise of such authority.

It is true that the release in question did not relieve Col. L. from liability to the plaintiff; and therefore, he could not be a competent witness to testify, generally, in the case. He might have been allowed to testify as to the character in which John Lamar signed the note, as this did not affect his liability to the plaintiff. The release, thus, would remove all interest springing out of his relations to the other parties in

the case, and render him competent to show the fact of the character in which John Lamar signed the note.

[3.] But we are clearly of opinion that the Court erred in holding that Col. Lamar could be a competent witness in this case, to testify generally, and thus to prove circumstances, the effect of which was to show, or was intended to show, that the judgment was dormant. Of a consequence, the result from such proof, if it were credited, would be the release of the parties from liability on the judgment. The record could be used in favor of the witness; and he would, therefore, be interested in making such proof.

[4.] We think, too, that the Court erred in charging the Jury, in substance, that the Act of our Legislature of December 19th, 1822, commonly called the Dormant Judgment Act, had in view the settlement of executions within the period of every seven years, if defendants had property sufficient to satisfy them; and that some effort to have the same satisfied, must be made within that period, and shown by the return of the proper officer.

We are by no means prepared to hold that a judgment creditor may not, in good faith, indulge his debtor beyond the period of seven years, and have a return, in good faith, made by the proper officer, for the purpose of showing part payment, or execution to a certain extent. On the contrary, we hold that the Act was passed, as it shows for itself, to prevent fraudulent collusion between parties to judgments, for the purpose of wrongfully enforcing such judgments to the injury of *bona fide* creditors, and that this was the mischief, and the only mischief, intended to be remedied.